UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------------x
DAVID WILLIAMS, TAJUAN CRUM, DERRICK QUILL, DAMIEN RICE,
DONNIE POWELL, AND DIANA SANFILIPPO McGLONE, as Administratrix
of the Estate of MICHAEL T. McGLONE,
on behalf of themselves and all other similarly situated,

Plaintiffs,

Case No.:

-against-

17-CV-6007(JFB)

LIPARI TRUCKING, INC. FRANK LIPARI, Chief Executive Officer
And President, along with any and all agents, subsidiaries and affiliates,

Defendants.

--------------------------------------------------------------------------------------x

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between DAVID WILLIAMS, TAJUAN CRUM, DERRICK QUILL, DAMIEN RICE, DONNIE POWELL, AND DIANA SANFILIPPO McGLONE (collectively "Plaintiffs" or "Class Representatives") and Class Counsel (as defined below) on behalf of themselves and the members of the Class (as defined below) and the FLSA Collective (as defined below) (Class Members and FLSA Collective Members, (collectively "Class Members"), and LIPARI TRUCKING, INC. and FRANK LIPARI ("Defendants" and together with Plaintiffs, the "Parties").

**I.**          **RECITALS AND BACKGROUND**

WHEREAS, in or about January 2018, Plaintiffs, through Class Counsel (as defined below) invited Defendants to participate in a negotiation with respect to potential claims against Defendants under (1) the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), (2) the New York Labor Law (including but not limited to the New York Minimum Wage Act, New York Labor Law § 160 et seq., New York Labor Law § 650 et seq., New York Wage Payment Act, New York Labor Law § 190 et seq., N.Y. Labor Law §§ 215 and 218), ("NYLL") for the alleged failure to pay overtime and other compensation and provide required notices to Plaintiffs and Class Members, and (3) alleged class-wide discrimination under federal, state and local law (the "Claims");

WHEREAS, Defendants deny all of the allegations made by Plaintiffs, and deny any and all liability and damages to anyone with respect to the Claims and the facts underlying the Claims;

WHEREAS, on November 21, 2019 the Parties engaged in a full-day mediation before Mediator Martin Scheinman, at Scheinman Arbitration and Mediation (the "Mediator");

WHEREAS, following the full-day mediation session, the Parties reached a settlement resulting in this Agreement;

WHEREAS, without admitting or conceding any liability or damages, Defendants have agreed to settle the Claims on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of litigation;

WHEREAS, Plaintiffs' Counsel, utilizing the services of Richard Polsinello (formerly Director of the Division of Labor Standards the New York State Department of Labor) and Richard Mormile (formerly Assistant District Director of the United States Department of Labor), has analyzed and evaluated the merits of the Claims, and the impact of this Agreement on Plaintiffs and the Class members, and based upon Plaintiffs' Counsel's analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Claims, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of the Plaintiffs and the Class Members;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims between Plaintiffs, the Class Members and Defendant;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Claims on the following terms and conditions:

1. Definitions. As used in this Agreement, the following terms have the following meanings:

   a. **"Applicable Class Period"** means, for each of the Settlement Classes described in Section 4 below, the time period referenced in Section 4 below for the FLSA Settlement Collective and the Settlement Classes.

   b. **"Attorneys' Fees"** means the amount to be paid to Class Counsel pursuant to Class Counsel's motion and subject to the Court's approval and the limitations described in Section 7 below.

   c. **"Claim Form"** means the claim form attached as part of Exhibit B.

   d. **"Claim Bar Date"** means the last date for a Class Member to perform one of the following acts as further defined in this Agreement: (i) file a Claim Form; (ii) opt-out of the Litigation, or; (iii) file a timely objection to the proposed settlement, which date shall be no later than thirty (30) days after the initial mailing of Notice

2

or (ii) twenty (20) calendar days from the Claims Administrator re-mailing a Notice Package pursuant to Section 11 of this Agreement because the initial mailing was returned as undeliverable, but in no event later than forty-five (45) after the initial mailing of the Notice.

e. **"Claims Administrator"** means the third-party claims administration firm of Arden Claims Services, upon which the parties mutually-agreed in good faith. The Claims Administrator shall be responsible for distributing notice, making payments, handling tax reports, and other duties as reasonably may be assigned by Defendant.

f. **"Claims Administrator Fees and Costs"** means a reasonable amount to be paid to the Claims Administrator for administering the Settlement. Claims Administrator Fees and Costs shall be borne by the Global Settlement Fund. The Claims Administrator costs from the Global Settlement Fund shall not exceed $35,000.00. Any Claims Administrator costs in excess of $35,000.00 shall be paid by Defendants.

g. **"Class Counsel" and "Plaintiffs' Counsel"** means the law firm of Avallone & Bellistri, LLP and its attorneys. The terms Class Counsel and Plaintiffs' Counsel shall be used interchangeably.

h. **"Class Members"** mean the individuals falling within the Settlement Classes, as described in Section 4 below.

i. **"Class Representatives"** mean Plaintiffs, as defined above. The terms Class Representatives and Plaintiffs shall be used

j. **"Court"** means the United States District Court, Eastern District of New York.

k. **"Defendants' Counsel"** means the law firm of Certilman Balin Adler & Hyman LLP and its attorneys.

l. **"Effective Date"** means: (i) if no appeal is taken from the Final Approval Order, thirty (30) days after the Court's entry of the Final Approval Order; or (ii) if an appeal is taken from the Final Approval Order, the date on which all such appeals (including, *inter alia*, petitions for rehearing or re-argument, petitions for rehearing *en banc*, and petitions for *certiorari* or any other form of review) have been finally disposed and can no longer be appealed or reviewed.

m. **"Final Approval Order"** means the Court's order granting final approval of the Settlement and the terms contained in this Agreement.

n. **"Final Approval Hearing"** means the final hearing scheduled before the Court on the question of whether the Settlement, including payment of Attorneys' Fees and Attorneys' Costs, Claims Administrator Fees and Costs, and the Service

3

Payments, should be finally approved as fair, reasonable and adequate as to the Class Members.

o.   **"Attorneys' Costs"** means the monies to be paid to Class Counsel for litigation and pre-litigation expenses, subject to the Court's approval and the limitations and procedures described in Section 7 below.

p.   **"Global Settlement Fund"** means the maximum amount that Defendants shall pay under the terms of this Agreement to fund the QSF (as defined below), together with Court-approved Attorneys' Fees, Attorneys' Costs, Service Awards and Claims Administrator Fees and Costs, which is the gross sum of nine hundred and ten thousand dollars ($910,000.00), and includes all payments to all Class Members who properly and timely file Valid Claim Forms, including Employer Payroll Taxes; Class Counsel's Court-approved Attorneys' Fees and Attorneys' Costs; Court-approved Service Payments to the Class Representatives, and the Reserve Fund, as all of those components are defined herein. No payments will be made to individuals who opt-out of the Litigation or who fail to become Participating Class Members (as defined below) by properly and timely filing Valid Claim Forms, and amounts allocated to these individuals from the Global Settlement Fund will be retained by Defendants.

q.   **"Net Settlement Fund"** means the remainder of the Global Settlement Fund after payments/deductions for: (1) Court-approved Attorneys' Fees and Attorneys' Costs; (2) Court-approved Service Awards to the Class Representatives; and (3) Claims Administrator Fees and Costs.

r.   **"Notice Package"** means, for each Class Member, the package compiled by the Claims Administrator, which shall include the applicable Notice Form, Claim Form, a 2019 IRS Form W-4, and a pre-addressed return envelope that the Class Member may use to return the Claim Form to the Claims Administrator.

s.   **"Notice Form"** means the notice form attached as Exhibit A.

t.   **"Participating Class Member"** means a Class Member who properly and timely submits a Valid Claim Form.

u.   **"Participating Class Member Payment"** means, for each Participating Class Member, his individual settlement payment, as described in Section 5 below.

v.   **"Parties"** means Defendants and the Class Representatives, on behalf of themselves and all others similarly situated.

w.   **"Preliminary Approval Date"** means the date the Preliminary Approval Order is entered by the Court.

4

x.   **"Preliminary Approval Order"** means the Court's order preliminarily approving this Settlement and preliminarily certifying a class and collective action for settlement purposes only as provided in Section 3.

y.   **"QSF"** means the Qualified Settlement Fund to be established and administered by the Claims Administrator, which shall consist of the total amount of all the Participates Class Member Payments as calculated and determined by the Claims Administrator pursuant to Section 5 herein.

z.   **"Released Parties"** means Lipari Trucking, Inc. and Frank Lipari, and its current, former and future parents, subsidiaries, affiliates and related entities (including, without limitation, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, coinsurers, re-insurers, shareholders, attorneys (including Defendants' Counsel), and personal or legal representatives, in their individual and corporate capacities).

aa.  **"Reserve Fund"** means an amount of $10,000 set aside from the Global Settlement Fund, to cover errors and omissions in identifying Eligible Settlement Class Members. The Reserve Fund may be used to make payments to Class Members who file late claims, who dispute their allocation amounts based on the allocation formula as described in Section 5 below, and/or to individuals who were not identified as Class Members but have a good faith claim for participation. Any disputes regarding late claims, allocation amounts or self-identifiers that can be resolved prior to finalizing the allocations to Participating Class Members will be resolved prior to finalizing the allocations to Participating Class Members, and the allocations to Participating Class Members shall be adjusted accordingly.

bb.  **"Service Payments"** means the payments to the Class Representatives, subject to the Court's approval and the limitations/procedures described in Section 8 below.

cc.  **"Settlement"** means the terms described in this Agreement.

dd.  **"Settlement Classes"** means the groupings of Class Members described in Section 4 below.

ee.  **"Valid Claim Form"** means a completed and signed Claim Form that satisfies the requirements described in Section 11.f below.

ff.  **"Wage and Hour Claims"** means any suits, actions, causes of action, complaints, charges, grievances, claims, demands, debts, losses, obligations and/or liabilities based on an alleged violation of or related to a violation of any federal, state or local wage and hour law, including but not limited to the FLSA and New York law, including, without limitation, the New York Labor Law (including but not limited to the New York Minimum Wage Act, New York Labor Law § 160 et seq., New York Labor Law § 650 et seq., New York Wage Payment Act, New York Labor Law § 190 et seq., N.Y. Labor Law §§ 215 and 218), the New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part

142, and any New York State Wage Orders, or any other federal, state or local law, including, but not limited to, for the failure to pay minimum, regular, straight time, gap time or other wages, failure to pay overtime, failures in record keeping, failure to pay spread of hours, denial of meal periods and rest breaks, failure to pay wages upon termination, failure properly to provide notices and/or itemized wage statements, failure to make weekly wage payments, failure to keep records of hours worked or compensation due, penalties for any of the foregoing, other wage and hour claims that were alleged or could have been alleged in the Litigation (as defined below), all other wage and hour claims arising out of or relating to work performed by Plaintiffs and Class Members for the Defendant, all 'derivative benefit claims' (*defined as* claims for benefits resulting from the alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), interest on such claims, and attorneys' fees, expenses and costs related to such claims, or any related claims of retaliation.

gg.     **"Employer Payroll Taxes"** means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation under this Agreement, including FICA, FUTA, and SUTA obligations.

hh.     **"Released Claims"** means Wage and Hour Claims and Discrimination Claims.

2.     No Admission of Liability and No Concession as to the Merits. Defendants deny that it violated the law in any manner alleged in or related to the Litigation. The Parties entered into this Agreement to avoid the risks, uncertainty, expense, and burden of further litigation. This Settlement shall not be construed or deemed to be: (i) an admission of, or evidence of, any liability or wrongdoing on the part of Defendants or the Released Parties; (ii) an admission of, or evidence of, the propriety of class or collective action certification, or the impropriety of decertification, on the part of Defendants or the Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal.

3.     Preliminary Approval Motion.

a.     Attached hereto as Exhibit A is the proposed Notice of Pendency of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing ("Notice"). Attached hereto as Exhibit B is the proposed Claim Form and Release ("Claim Form"). Class Counsel will draft and submit to Defendants' Counsel for their review a draft Motion for Preliminary Settlement Approval, memorandum of law in support thereof, and Proposed Order (together, with the Proposed Notice and Claim Form, the "Preliminary Approval Motion"). Defendants shall have up to five business days to review the terms of the Preliminary Approval Motion to ensure that the Motion is consistent with this Agreement. If Defendants concludes that the Preliminary Approval Motion is consistent with the Agreement, it will not oppose the Motion.

b.     The Preliminary Approval Motion will seek the setting of date(s) for individuals to opt-out or provide objections to the Agreement, which date will be forty five (45 days from

6

the mailing of Notice and Claim Form to the Class Members, and for a Fairness Hearing at the earliest practicable date.

      c.     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things, seek to: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel Attorneys' Fees and Attorneys' Costs; (5) award the Claims Administrator Fees and Costs; and (6) award Service Payments to the Plaintiffs.

      d.     The Parties expect that the Preliminary Approval Motion will not be opposed, but Defendants may respond to the Preliminary Motion to ensure that it is consistent with the terms of this Agreement. Any responsive papers will be due thirty (30) days after Plaintiffs file the Preliminary Approval Motion.

      e.     If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation initiated by the filing of the Complaint will proceed as if no settlement had been attempted. The Parties retain all rights with respect to whether the Litigation should be maintained as a class action or collective action and with respect to the merits of the claims and defenses being asserted in the Litigation.

      f.     The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

4.     Settlement Classes. The Parties will ask the Court to certify the following:

      a.     **FLSA Settlement Collective**: All home delivery drivers and helpers employed by Defendants between October 13, 2011 and the Final Approval Date;

      b.     **Wage and Hour Settlement Class**: All home delivery drivers and helpers employed by Defendants between October 13, 2011 and the Final Approval Date; and

Together, the FLSA Settlement Collective and the Wage and Hour Settlement Class are the "Settlement Classes." Any member of the Settlement Classes shall be eligible to submit a claim for payment from the QSF and FLSA Settlement Collective members shall be eligible, by timely submission of a Valid Claim Form, to opt-in to the Litigation. An individual may be a member of the FLSA Settlement Collective and Wage and Hour Settlement Class.

5.     Determining the Participating Class Member Payments. Participating Class Member Payments shall be determined based upon the Net Settlement Fund. Within thirty (30) business days of the end of the Claim Period the Claims Administrator will calculate the Participating Class Member Payments by allocating the following payments for Class Members during the Applicable Class Period as follows:

a. A Participating Class Member who properly and timely files a Valid Claim Form with the Claims Administrator shall be paid the following amount from the Net Settlement Fund:

(i) for a Wage and Hour Settlement Class Member: An amount which reflects the percentage of total months (either full or partial) worked by said Wage and Hour Settlement Class Member divided by the total months (either full or partial) worked by all Drivers and Helpers during the period from October 13, 2011 to the Final Approval Date ("Percentage of Total Months Worked").

The Claims Administrator will provide its calculations to Class Counsel and to Defendants' Counsel within three (3) business days after completing the calculations referenced in this Section 5. The said calculations shall be subject to review and approval by Class Counsel and Defendants' Counsel, within five (5) business days, which approval shall not be unreasonably withheld. The total amount of all approved Participating Class Members Payments shall be deemed the QSF.

6. Funding the QSF. Within thirty (30) business days after the Effective Date, Defendants shall deposit into the QSF the total amount of all approved Participating Class Members Payments.

7. Attorneys' Fees and Attorneys' Costs.

a. Class Counsel shall move for Court approval of less than one-third (1/3) of the Global Settlement Fund for Attorneys' Fees (two hundred and ninety thousand eight hundred and thirty three dollars and thirty-three cents ($290,833.33 ), inclusive of Attorneys Costs –of which shall be deducted from the Global Settlement Fund. The Attorneys' Fees and Attorneys' Costs awarded to Class Counsel shall be at the sole discretion of the Court, taking into consideration that the Plaintiffs agreed to give the Attorneys 1/3 of the Global Settlement Fund. This Settlement is not contingent upon the Court's approval of such Attorneys' Fees and/or Attorneys' Costs. The Class Representatives and Class Counsel agree that they shall be responsible for justifying the amount of this cost and fee payment to the Court, and they agree to submit, as appropriate, the necessary materials to justify this payment to the Court. Defendants shall not oppose Class Counsel's motion for the recovery of Attorneys' Fees and/or Lawsuit Costs.

b. The Claims Administrator shall pay any Attorneys' Fees and Lawsuit Costs awarded by the Court in connection with this Settlement from the Global Settlement Fund to Class Counsel no later than forty -five (45) business days after the Effective Date.

c. Payments made pursuant to this Section 7 shall be reported to all governmental taxing authorities by the Claims Administrator on IRS Forms 1099.

d. Any portion of the Attorneys' Fees and Lawsuit Costs not approved by the Court shall be allocated to the Participating Class Member Payments pro-rata.

8

e.  Payments made pursuant to this Section 7 shall constitute full satisfaction of any claim for attorneys' fees or costs made in connection with the Litigation, and the representation and activities of Class Counsel prior to litigation, and the Class Representatives and Class Counsel agree that they shall neither seek nor be entitled to any additional attorneys' fees or costs under any theory. Settlement Class Members shall not be entitled to any additional attorneys' fees or costs in connection with the Litigation under any theory. Accordingly, Class Counsel, Plaintiffs, and Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he or they may have against Releasees for attorneys' fees, expenses and costs associated with Class Counsel's representation of the Class.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

8.  Service Payments.

a.  Class Counsel shall move for Court approval of the payment from the Global Settlement Fund of a Service Payment not to exceed seventy-two thousand five hundred dollars ($72,500.00) of which DAVID WILLIAMS is to receive thirty thousand dollars ($30,000.00) and the remaining named Plaintiffs TAJUAN CRUM, DERRICK QUILL, DAMIEN RICE  DONNIE POWELL and DIANA SANFILIPPO McGLONE are to receive ($8,500.00) each in recognition of their respective efforts in coming forward as Class Representatives and otherwise benefiting the Settlement Classes. Such Service Payments shall be at the sole discretion of the Court and this Settlement is not contingent upon the Court's approval of such Service Payments. Defendants shall not oppose Class Counsel's motion for the payment of such Service Payments, subject to the limitations herein.

b.  Any Service Payments approved by the Court in conjunction with the Settlement shall be deducted and paid from the Global Settlement Fund, and shall be in addition to the Participating Class Member Payments otherwise received by each Class Representative from the QSF. Defendants shall pay the Service Payments to the Claims Administrator within thirty (30) business days after the Effective Date, and the Service Payments shall be distributed by the Claims Administrator in separate checks mailed to the Class Representatives no later than forty -five (45) business days after the Effective Date.

c.  Any portion of the Service Payments not approved by the Court shall be allocated to the QSF and distributed to the Participating Class Member Payments pro-rata.

9.  Claims Administrator Fees and Costs.

a.  The Parties have retained the Claims Administrator, who shall serve as the administrator of the Settlement and perform the services described in this Agreement and any other

services mutually agreed to by the Parties at a rate not to exceed Thirty-Five Thousand Dollars and Zero Cents ($35,000.00).

b. The Parties, through their counsel, will cooperate in good faith to resolve any disputes regarding the Claims Administrator's ability or need to perform certain duties under this Agreement, and any unresolved disputes shall be referred to the Court. The Claims Administrator will print the Notice Packages and related documentation, using the attachments to this Agreement and records provided by Defendants in accordance with this Agreement.

c. Defendants shall provide the Claims Administrator with necessary data regarding the Class Members, and Defendants and their Counsel may communicate with the Claims Administrator without notice to Class Counsel, in order for the Claims Administrator to perform its duties.

d. The Parties will have equal access to the Claims Administrator and all information related to the mailing of the Notice and Claim Forms and processing of the Settlement. The Claims Administrator will also provide regular reports to the Parties' Counsel regarding the status of the mailing of the Notice Package to Class Members, the claims administration process and the distribution of Participating Class Member Payments.

e. The Claims Administrator shall be paid its reasonable and actual fees and costs in connection with the implementation of the settlement, which shall be paid from the Global Settlement Fund. One-half of the Claims Administrator's fees and costs approved by the Court ($17,500.00) shall be paid by Defendants within ten (10) business days of the Preliminary Approval Date by the Court. The remaining one-half of the Claims Administrator's fees and costs approved by the Court ($17,500.00) shall be paid by Defendants within thirty (30) business days after the Effective Date.

f. In the event that either Defendants' Counsel or Class Counsel take the position that the Claims Administrator is not acting in accordance with the terms of the Agreement, such Party shall meet and confer with opposing counsel prior to raising any such issue with the Claims Administrator or the Court.

g. Any amount not used from the Reserve Fund shall be refunded by the Claims Administrator to the Defendants no later than forty-five (45) calendar days after the checks were issued by the Claims Administrator.

10. **Information to be Provided by Defendant.** Defendants shall work cooperatively and in good faith with Class Counsel and the Claims Administrator to facilitate the claims notice process. Within ten (10) business days of the Preliminary Approval Date, Defendants will provide to the Claims Administrator a list containing Class Members' names, and last known street addresses and telephone numbers, to the extent such information is available.

11. **Notice and Claim Process.**

a.  Form of Notice. The attached Notice and Claim Form to each Class Member shall inform him of the Settlement, the claims he is releasing, and the formula used to calculate the payments to Class Members under the Settlement.

b.  Sending the Notice Package. Within twenty (20) business days of the Preliminary Approval Date, the Claims Administrator will send by First Class U.S. mail the appropriate Notice Package to each Class Member. The Notice Package and its envelope or covering shall be marked to denote the return address of the Claims Administrator.

c.  Class Members Lacking Mail: For those Class Members for whom Defendants do not have a U.S. mail in its records, the Claims Administrator shall take reasonable steps to obtain the correct address of the Class Member, including by calling the Class Member (if a telephone number is available), and performing a skip trace (if social security number is available). If an address is obtained, the Claims Administrator will promptly mail the Notice Package to the Class Member. If an address is not obtained, the Claims Administrator will notify the Parties, who will confirm whether an additional step should be taken to notify the Class Member(s). No Notice Packages shall be mailed after the Claim Period, unless otherwise agreed by the Parties or ordered by the Court.

d.  Unverified Class Members. Any potential Class Member who does not appear in the data provided by Defendants but who claims to have been employed during the Class Period ("Unverified Class Members") must submit additional proof of their employment to the Claims Administrator. No Unverified Class Member shall participate in the settlement unless otherwise agreed by the Parties or ordered by the Court.

e.  Disputed Awards. In the event a Class Member disputes a Participating Class Member Payment amount under this Agreement, Defendants will attempt to confirm the information using regularly maintained business records. If Defendants dispute the information or claim(s) provided or asserted by the Class Member, Class Member shall be required to provide affirmative documentation, if available, or an attestation to the Claims Administrator, which Defendants may rebut with records and/or other information. A copy of the information submitted by Defendants and the Class Member shall also be provided to Class Counsel. The Claims Administrator shall consider the information submitted by Defendants and the Class Member before it makes a decision as to payment in accordance with Section 5.

f.  Claims Made Process. The proceeds of the Net Settlement Fund shall be disbursed to Class Members who properly and timely return Valid Claim Forms to the Claims Administrator, and submit completed 2019 IRS Form W-4.

(i)   To be a Valid Claim Form, the Claim Form must be completed and provide the information as instructed on the Claim Form and be signed, dated, and postmarked or otherwise returned by mail to the Claims Administrator within the Claim Period.

11

(ii)    If a Claim Form and/or 2019 IRS Form W-4 are returned to the Claims Administrator and not completed as described above, within five (5) business days of its receipt, the Claims Administrator shall send a notice to the Class Member advising of the defects and including new documents to be completed.   The Claims Administrator shall simultaneously provide Class Counsel and Defendants' Counsel with a copy of the notice. The Class Member shall then have the remainder of the forty-five (45) days in the Claim Period or twenty (20) days from re-mailing, whichever is longer, to correct the defect(s) of his submission. If a Valid Claim Form and W-4 are not received within that time period, the Claim Form shall be null and void, unless otherwise agreed to in writing by the Parties or approved by the Court.

(iii)   Upon the Effective Date, Class Members for whom a Claim Form has not been returned to the Claims Administrator or whose Claim Form is not a Valid Claim Form release their claims against the Released Parties as described in Section 13 below and waive any right to receive any payment associated with the Settlement, unless the Class Members exclude themselves from the Settlement as described in Section 11.j below, or unless otherwise agreed to in writing by the Parties or approved by the Court.

g.  Returned Notice Packages. If a Class Member's Notice Package is returned with a forwarding address, the Claims Administrator shall promptly re-mail the Notice Package to the forwarding address. If a Class Member's Notice Package is returned without a forwarding address, the Claims Administrator shall take reasonable steps to obtain the correct address of the Class Member, including by calling the Class Member (if a telephone number is available), and performing a skip trace (if social security number is available) and/or other similar address search. If a new address is obtained, the Claims Administrator will promptly re-mail the Notice Package to the Class Member. If a new address is not obtained, the Claims Administrator will notify the Parties, who will confirm whether any additional steps should be taken to notify the Class Member(s). Any Class Member whose Notice Package is re-mailed shall have until the end of the Claim Period or twenty (20) days after the re-mailing, whichever is later, to return a Claim Form. No Notice Packages shall be mailed after the Claim Period, unless otherwise agreed by the Parties or ordered by the Court.

h.  Declaration of Claims Administrator. The Parties shall provide the Court with the Final Approval motion, a declaration by the Claims Administrator detailing its due diligence and providing proof of mailing and/or e-mailing with regard to the Notice and Claim Forms. The declaration will also identify the number of exclusion requests (explained below) and any objections.

i.  Objecting to the Settlement. Class Members may object to the Settlement by following the instructions described in the pertinent Notice Form. To be valid, an objection must be postmarked to the Claims Administrator within the Claim Period. The Claims Administrator shall send to the Parties' Counsel copies of all objections within three (3)

12

business days of their receipt, and Class Counsel shall file such objections with the Court at the time of filing of the Final Approval motion. The written objection must include the words, "I object to the Lipari Trucking, Inc. driver and helper settlement" as well as all reasons for the objection. Any reasons not included in the written objection will not be considered by the Court. The written objection must also include the name, address, telephone number, and signature of the Class Member making the objection.

j.  Exclusions from the Settlement. Class Members may exclude themselves from the Settlement by following the instructions described in the pertinent Notice Form. To be valid, an exclusion must be postmarked to the Claims Administrator within the Claim Period. The Claims Administrator shall send to the Parties' Counsel copies of all exclusions within three (3) business days of their receipt, and Class Counsel shall file such exclusions with the Court at the time of filing of the Final Approval motion.

The exclusion must include the words "I opt out of the Lipari Trucking, Inc. driver and helper settlement" in order to be valid. The exclusion must also contain the name, address, telephone number, and signature of the Class Member to be valid.

k.  Payments to Participating Class Members.

(i)  Within forty-five (45) business days after the Effective Date, the Claims Administrator shall mail to each Participating Class Member settlement checks written from the QSF's bank account(s) and equaling his/her Participating Class Member Payment. Fifty percent (50%) of the Participating Class Member Payment shall be in the form of a non-payroll check from which no payroll taxes or withholdings shall be made. This payment will be reflected in an IRS Form 1099 issued by the Claims Administrator to the Participating Class Member at the end of the tax year. The remaining fifty percent (50%) of the Participating Class Member Payment shall be in the form of a payroll check from which the Claims Administrator shall withhold all taxes and withholdings ordinarily borne by employees.

Unless the Claims Administrator has received updated contact information, the settlement checks issued pursuant to this Section will be mailed by the Claims Administrator to the Participating Class Member at the address listed on the Participating Class Member's Claim Form. If a Participating Class Member's settlement check is returned with a forwarding address, the Claims Administrator shall promptly re-mail the settlement checks to the forwarding address. If a Participating Class Member's settlement check is returned without a forwarding address, the Claims Administrator shall take reasonable steps to obtain the correct address of the Class Member, including by calling the Class Member (if a telephone number is available), and performing a skip trace (if social security number is available). If a new address is obtained, the Claims Administrator will

13

promptly re-mail the settlement check to the Class Member. If a new address is not obtained, the Claims Administrator shall notify the Parties' Counsel, who will confer in good faith, on a case-by-case basis on how to proceed. For Class Members whose checks are re-mailed, the ninety (90) day period during which Class Members must cash their checks will run from the date that appears on the check. If a settlement check is returned as undeliverable sixty (60) days or more after it is dated and a new mailing address is obtained, the Claims Administrator will re-issue the settlement check for that Class Member. No checks will be re-issued more than 120 days after the date of the first check to that class member.

(ii)     If a Participating Class Member reports that his or her settlement check was lost, stolen, or undelivered, the Claims Administrator shall promptly issue a stop payment order on the original check and, after investigating, if appropriate, issue a new check to such Participating Class Member.

(iii)    Each settlement check shall expire ninety (90) days after it is dated and the unclaimed funds shall revert to Defendant. The Claims Administrator shall inform counsel for the Parties of the number of any uncashed checks no later than seventy (70) days after the relevant check issue date.

(iv)     The Claims Administrator shall report to Defendants' Counsel and Class Counsel the number of all checks mailed and cashed, and the dates thereof.

(v)      Defendants shall have no responsibility for, and no liability whatsoever with respect to, the allocation among the Participating Class Members and/or Class Representatives, and/or any other person who may assert some claim thereto, of any award or payment issued or made in the Litigation or pursuant to this Agreement, including, but not limited to, any award or payment made pursuant to Sections 5 or 8.

l.  Payroll Taxes. The Claims Administrator shall calculate and pay from each Participating Class Member's share of the Net Settlement Fund the Participating Class Member's share of payroll taxes to federal and state taxing authorities as required. The Defendants' share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the Participating Class Member Payments also shall be paid from the Net Settlement Fund.

m.  Class Members' & Class Counsel's Responsibility for Any Additional Taxes.  Should any government authority determine that all or any part of the payment(s) made under an IRS Form 1099 to any Participating Class Member under this Settlement Stipulation are taxable as wages, that Participating Class Member will be solely responsible for the payment of the Class Member's share of withholding taxes, plus applicable interest. Class Counsel agrees that it will be solely responsible for the payment of any and all taxes due

14

as a result of Class Counsel's receipt of all or any part of the payments made for Attorneys' Fees and/or Attorneys' Costs under this Agreement.

12.     **Settlement Payments Do Not Trigger Additional Benefits.** All payments to Participating Class Members shall be deemed to be paid to such Participating Class Members solely in the year in which such payments actually are received by the Class Members. The Parties agree and the Participating Class Members acknowledge that the payments provided for in this Agreement are the sole payments to be made to the Participating Class Members, and that the Participating Class Members are not entitled to any new or additional compensation or benefits as a result of having received the payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement). Further, the Parties agree and the Participating Class Members acknowledge that the payments provided for in this Agreement will not form the basis for contributions to, benefits under, or any other monetary entitlement under Defendants' sponsored benefit plans, policies, or bonus programs, and that such payments will not be applied retroactively, currently, or on a going forward basis, as salary, earnings, wages, or any other form of compensation for the purposes of Defendants' wage or benefit plans, policies, or bonus programs.

13.     **Release By Class Members. By operation of the entry of the Judgment and Final Approval, upon the Effective Date, and except as to such rights or claims as may be created by this Agreement, and FLSA Claims, each Class Member who has not submitted a valid and timely request for exclusion (as set forth in Section 11.j), and on behalf of their respective current, former and future heirs, spouses, executors, administrators, trustees, agents, assigns and legal representatives, fully release and discharge the Released Parties (as defined in Section 1.z) from any and all Wage and Hour Claims (as defined in Section 1.ff) under the New York Labor Law (including but not limited to the New York State Department of Labor Regulations, 12 N.Y.C.R.R. part 142, and any New York State Wage Orders) and any and all discrimination claims asserted in the Complaint whether under any federal, state or local human rights, whistleblower, retaliation, discrimination, bias, civil rights, benefits, pension, labor or any other federal, state or local law, rule regulation, or ordinance of any kind (including but not limited to Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; The New York Executive (Human Rights) Law; and the New York City Administrative Code);**%all whether known and/or unknown, all suspected and/or unsuspected, all from the beginning of the Applicable Class Period through the date of Preliminary Approval, all including, without limitation, any claims for liquidated damages, interest, compensatory damages, punitive damages, penalties of any nature whatsoever, other compensation or benefits, attorneys' fees and costs, ~~and any other form of compensation or relief permitted under any federal, state or local laws.~~ Notwithstanding the aforesaid release of discrimination claims, Class Members do not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC"), subject to the condition that they agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement**

*[handwritten left margin:]* ✗(together, the Discrimination Claims")



15

hh.

therefrom. **Furthermore, by operation of the entry of the Court's approval of this Agreement, and except as to such rights or claims as may be created by this Agreement each individual Participating Class Member fully releases Released Parties from all Released Claims as defined in Section 1.)(. In addition, each Participating Class Member acknowledges and agrees to forever and fully release the Released Parties from all Released Claims by endorsing and depositing their final Settlement Check. The back of the final check shall bear the following legend:**



> **"By my endorsement of this check, I opt into the lawsuit E.D.N.Y. 17-cv-6007(JFB) and release the Released Parties from all of my Released Claims as described in the Settlement Agreement and Release."**

14.   Settlement Contingent on Court Approval.   This Agreement is contingent upon the Court's approval of the Settlement. If the Court does not grant preliminary or final approval or the Effective Date does not occur, this Agreement may be voided at either Party's option, in which case this Agreement (including its Exhibits) will become void and will not be used for any purpose whatsoever, including to support certification or oppose decertification of any claim, in connection with any further litigation in the Litigation or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint. In such an event, the Parties shall proceed with the Litigation unless the Parties jointly agree to seek reconsideration or appellate review of the decision denying preliminary or final approval, or attempt to renegotiate the Settlement and seek Court approval of a renegotiated settlement.

    a.   In the event any reconsideration and/or appellate review is denied, or a mutually agreed-up settlement is not approved:

        (i)   The Litigation will proceed as if no settlement had been attempted. In that event, any classes certified for purposes of settlement shall be decertified, and Defendants may contest whether the Litigation should be maintained as a class or collective action and contest the merits of the claims being asserted by the Plaintiffs in this action.

        (ii)   The Claims Administrator will provide notice to Participating Class Members that the Settlement did not receive final approval and that, as a result, no payments will be made to the Participating Class Members under the Settlement. Such notice shall be mailed to the Participating Class Members using the addresses used by the Claims Administrator in sending the Notice and Consent Forms.

15.   Non-Disclosure and Communications.

    a.   Except as may be required by law or by the Court, the Parties agree not to publically comment on the Settlement or the Litigation (i.e. will respond "no comment") unless after receiving prior consent of the other Party. Further, the Parties agree that they will not, directly or indirectly, issue a press release, hold a



16

press conference concerning the Litigation, publish information about the Agreement or the settlement negotiations in any form of media, including, without limitation, on any website or social media outlet, blogs or advertising, or otherwise publicize the Agreement or negotiations, except as permitted in this Agreement or as required by law or by the Court. The Parties further agree not to respond to any press inquiries concerning the Settlement except to refer reporters to the papers filed with the Court, unless the statement is mutually agreed upon by Class Counsel and Defendants' Counsel. Additionally, any website or other social or networking media posting established at any time by the Class Representatives or Class Counsel that in any way references this dispute or the Litigation, shall be promptly and permanently taken down and there shall be no other posting on or creation of a website or any other social or networking media posting regarding this dispute, the Litigation, this Agreement, or the Parties' settlement negotiations. The Class Representatives further agree not to make any public disparaging comments relating to Defendants or their affiliated companies, or relating in any way to its and their personnel or services.



b. Nothing in this Agreement shall prevent Defendants from filing any required regulatory disclosures regarding the Settlement or the Litigation or shall prevent the Parties or their counsel from complying with their obligations under the law.

c. Class Representatives and Class Counsel will promptly notify Defendants' Counsel of any third-party demand that seeks the disclosure of any information pertinent to this Settlement and shall not make any such disclosure until at least fifteen (15) business days after the notice is provided, except if an earlier production is court-ordered and Defendants have been provided at least five (5) days to respond to such notice.

16. Return of Documents/Data. Within one hundred twenty (120) days of the Effective Date, Class Counsel agrees to return or destroy all non-public documents and information produced by Defendants in the Litigation or in the settlement negotiations, and provide written notice to Defendants' Counsel, addressed to the attention of Douglas E. Rowe, Esq., certifying that it has returned and/or destroyed all such documents.

17. Mutual Full Cooperation. The Parties will fully cooperate with each other and with the Claims Administrator to accomplish the terms of this Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Agreement. The Parties will use their best efforts to effectuate Agreement, including during any appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

18. Complete Agreement. No representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement, which contains the entire, complete, and integrated statement of all settlement terms and supersedes all previous oral or written agreements. All of the exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference. This Agreement may not

17

be amended or modified except by a writing signed by the Parties' authorized representatives.

19.    **Knowing and Voluntary Agreement.** The Parties enter into this Agreement knowingly, voluntarily, and with full knowledge of its significance. The Parties have not been coerced, threatened or intimidated into signing this Agreement and have consulted with legal counsel regarding the Agreement.

20.    **Notifications and Communications.** Any notifications or communications made in connection with this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

| For the Class Representatives and Class Members: | For Defendants Lipari Trucking and Frank Lipari |
|---|---|
| Rocco Avallone, Esq.<br>Christopher Bellistri, Esq.<br>Avallone & Bellistri, LLP<br>3000 Marcus Avenue<br>Suite 3E7<br>Lake Success, NY 11042<br>Tel: (516)986-2500<br>Fax: (516)986-2501<br>ravallone@lawyersab.com<br>cbellistri@lawyersab.com | Douglas E. Rowe, Esq.<br>Desiree M. Gargano, Esq.<br>Certilman Balin Adler & Hyman, LLP<br>90 Merrick Avenue<br>9th Floor<br>East Meadow, NY 11554<br>Tel: (516)296-7000<br>Fax: (516)296-7111<br>drowe@certilmanbalin.com<br>dgargano@certilmanbalin.com |

21.    **Severability.** If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other part of this Agreement, which shall be construed, reformed and enforced to affect the purposes thereof to the fullest extent permitted by law.

22.    **Captions and Interpretations.** Section or paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

23.    **Binding on Assigns.** This Settlement Stipulation shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns; however, this Agreement is not designed to and does not create any third party beneficiaries, either express or implied.

24.    **Enforcement of Agreement and Governing Law.** This Agreement and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, and to have been wholly performed, in the State of New York, and the rights and obligations of the

Parties to this Agreement shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of New York without giving effect to that State's choice of law principles. The Parties submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of this Agreement.

25. Agreement Form and Construction.

    a. No party shall be deemed the drafter of this Agreement. Accordingly, the terms and conditions of this Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

    b. This Agreement may be executed in electronic counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Agreement.

    c. This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Litigation.

26. Parties' Authority. The signatories hereto hereby represent that they are fully authorized to enter into this Settlement Stipulation and bind the Parties hereto and the Class Members to the terms and conditions thereof.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

19

27.   Execution.  This Agreement may be executed in counterparts, each of which shall be deemed as an original but all of which shall constitute one and the same instrument. Execution shall be effective by the signatory signing on the designated signature block below and the signatory's counsel transmitting that signature page via facsimile or email to counsel for the other Parties.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email to counsel for the other Parties. Photocopied, electronic signatures via DocUSign, and/or facsimile signatures shall be deemed originals for all purposes.

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Settlement Stipulation to be signed on the dates entered below:

_____     7/26/19
David Williams                                             Date

_____     7/30/19
Tajuan Crum                                               Date

_____     7/30/19
Derrick Quill                                               Date

_____     8/01/19
Damien Rice                                               Date

_____     7/30/19
Donnie Powell                                            Date

_____     7/30/19
Diana Sanfilippo McGlone                           Date


ON BEHALF OF LIPARI TRUCKING, INC. and FRANK LIPARI:


By:_____     _____     _____
        Name                          Title                         Date


By:_____     _____     _____
        Name                          Title                         Date


20

27. **Execution.** This Agreement may be executed in counterparts, each of which shall be deemed as an original but all of which shall constitute one and the same instrument. Execution shall be effective by the signatory signing on the designated signature block below and the signatory's counsel transmitting that signature page via facsimile or email to counsel for the other Parties. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email to counsel for the other Parties. Photocopied, electronic signatures via DocUSign, and/or facsimile signatures shall be deemed originals for all purposes.

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Settlement Stipulation to be signed on the dates entered below.

_____        7/26/19
David Williams                                              Date

_____        7/30/19
Tajuan Crum                                                Date

_____        7/30/19
Derrick Quill                                                Date

_____        8/01/19
Damien Rice                                                Date

_____        7/30/19
Donnie Powell                                             Date

_____        7/30/19
Diana Sanfilippo McGlone                          Date


ON BEHALF OF LIPARI TRUCKING, INC. and FRANK LIPARI:

By: _____    PRESIDENT 8/5/19        8/5/19
        Name                          Title                     Date

By: _____    PRESIDENT                8/5/19
        Name                          Title                     Date